## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 24-CR-104-RC |
| v. | : | 18 U.S.C. § 111(a)(1) |
| CHRISTOPHER GEORGE ROCKEY, | : | |
| Defendant. | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Christopher George Rockey, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

***The Defendant's Participation in the January 6, 2021, Capitol Riot***

8. The defendant traveled from South Carolina to Washington, D.C. and attended then-President Trump's speech on January 6, 2021, and then walked to the Capitol. He wore a green helmet, camouflage pants, goggles, and reinforced gloves. *See* Image 1 below.



*Image 1 – Christopher Rockey on the Upper Terrace of the Capitol Building*

9. The defendant made his way to the Upper West Terrace and entered the Capitol through the Senate Wing Door at approximately 2:23 p.m. From there, the defendant walked to the Rotunda and toward the House Chamber. Rioters, including the defendant, encountered a line of police who were attempting to stop the crowd from advancing. The crowd pushed past the police line at approximately 2:36 p.m. and the defendant continued to walk through the Capitol building, eventually exiting through the East Front House Door at approximately 2:44 pm.

10. After exiting the Capitol, the defendant joined other rioters on the Upper Terrace on the north side of the Capitol. At approximately 4:35 p.m., law enforcement officers began attempting to clear the Upper Terrace. The defendant moved up in the crowd towards the line of officers. The officers ordered the rioters to "move back," but the crowd yelled "hold the line," "push," and "traitor." Instead of retreating, the defendant pushed into, then grabbed the top of MPD Officer M.P.'s riot shield. The defendant pulled the shield down, potentially exposing the officer to harm. *See* Images 2 and 3 below.



*Image 2 – Rockey pulling Officer M.P.'s shield down*



*Image 3 – Rockey immediately after releasing Officer M.P.'s shield*

11.     Approximately two minutes later, the defendant grabbed onto MPD Officer M.T.'s baton and pulled another officer's shield down. The defendant's decisions to confront the officers were part of an effort by the mob to stop law enforcement from advancing and clearing the Upper Terrace of rioters.

### *Elements of the Offense*

12. The parties agree that Assaulting, Resisting, or Impeding Officers in violation of 18 U.S.C. § 111(a)(1) (Count Two) requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer M. P., an officer from the Metropolitan Police Department;

   b. Second, the defendant did such acts forcibly;

   c. Third, the defendant did such acts voluntarily and intentionally;

   d. Fourth, Officer M.P. was assisting officers of the United States who were then engaged in the performance of their official duties; and

   e. Fifth, the defendant made physical contact with Officer M. P. or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the violation of 18 U.S.C. § 231(a)(3) charged in Count One.

### *Defendant's Acknowledgments*

13. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly, voluntarily, and intentionally assaulted, resisted, opposed, impeded, intimidated, or interfered with MPD Officer M.P. on the Upper Terrace, and that, at the time, Officer M.P. was engaged in the lawful performance of his official duties and was assisting officers of the United States who were then engaged in the performance of their official duties. The defendant further admits that he made physical contact with Officer M.P. and acted with the intent to commit another felony, specifically, an act of civil disorder, as charged in Count One of the indictment in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     *s/ Tighe Beach*
       Tighe Beach
       Assistant United States Attorney
       CO Bar No. 55328
       Capitol Siege Section
       U.S. Attorney's Office
       District of Columbia
       Telephone No: (202) 809-2058
       Email Address: tighe.beach@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Christopher George Rockey, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 5/10/24    _____
      6-12-24    Christopher George Rockey
                 Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 5/10/24    _____
      6/12/24    R. Brady Vannoy
                 Attorney for Defendant