IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 1:24-cr-00104-RC |
| vs. | SENTENCING MEMORANDUM & MOTION FOR A DEPARTURE OR VARIANCE |
| CHRISTOPHER GEORGE ROCKEY | |



*"I accept 100% of the responsibility for my actions on that day. I never intended for anything that happened to take place. I never envisioned myself on the wrong side of the law"* <u>Statement of Christopher Rockey</u>, PSR, pg. 11, paragraph 35.

### BACKGROUND

On January 6, 2021, Christopher Rockey ("Rockey" or "Mr. Rockey") made the worst decision of his life when he decided to enter the United State Capitol. Since that time, he has

1

constantly lived on the edge of destitution; he is nearly broke, is disabled, shamed, and understandably fearful and concerned about the potential of spending years in prison.

Mr. Rockey is an unlikely federal defendant. By all definitions, he has lived an honorable life. He was born to a "very poor" but loving family in Buffalo, NY and is one of eight kids and worked on a farm from a young age to help support the family and assisted with his adoptive brother who had muscular dystrophy. PSR, at pg. 13. Rockey's parents emphasized to all their children the importance of God, Family and Country and instilled traditional American values in him, to work hard, love your Country, protect your family and friends, and respect authority.



Mr. Rockey joined the Marine Corps shortly after high school and served as a forward observer where he deployed five (5) times in service of his Country. Rockey thrived in the Marine Corps and he deployed in support of Operation Desert Storm where he experienced combat. One of Mr. Rockey's jobs while in combat was to conduct battle damage assessments

following artillery strikes and other ground combat operations. Chris would have to visually inspect and report on the carnage following operations. This is when his struggles with combat trauma began. PSR, pg. 17.

Since leaving the service with an Honorable Discharge, Chris has been married four (4) times and worked as a surveyor in New York for approximately seventeen (17) years, leaving "due to disability". PSR, pg. 14, 19. He also worked as a wood worker until stopping in 2021 after being deemed "permanently and totally disabled and unemployable through the VA". Exhibit #1, March 26, 2024, Letter from Department of Veteran's Affairs. He currently resides with his girlfriend in Summerton, SC and is unemployed.



## PHYSICAL AND MENTAL HEALTH

Mr. Rockey has been very involved with the VA since 2014. He has engaged in experimental PTSD "Prolonged Exposure Therapy", nightmare therapy via "Nightware", and

Cognitive Behavior Therapy." <u>Exhibit #2</u>, Dr. Maddox Report, October 9, 2024. Other than combat trauma, Chris's medical conditions include:

1. Tendonitis;
2. Herniated discs;
3. Sleep Apnea;
4. Asthma;
5. High Blood Pressure;
6. High Cholesterol;
7. Arthritis;
8. Calcified discs in his neck.

PSR, pg. 15. He is also on a litany of medications for both his physical and mental conditions, including an injectable medication for high cholesterol. PSR, pg. 15-16. Chris also deals with the trauma described in paragraph 79 of the PSR.

According to 38 CFR Sec. 3.666, the Department of Veterans Affairs is required to discontinue a Veteran's disability pension effective the 61st day of incarceration following conviction of a felony or misdemeanor. Moreover, should Mr. Rockey receive a custodial sentence, his VA treatments for both his mental and physical problems will end while he is in custody. As such, the undersigned asks that should the Court impose a custodial sentence, it be done either on house arrest or at a local detention facility on the weekends.



## **ROLE IN JANUARY 6TH**

The time period from March of 2020 until January 6, 2021, was a very tough time for Mr. Rockey. The COVID-19 pandemic exacerbated his pre-existing mental health conditions and that, coupled with the vitriolic political climate, led him to make the poor decision to travel to the "Save America Rally". Chris is a large man and has been a "helper" his whole life, from the time he spent on the farm, to taking care of his adoptive brother with muscular dystrophy, to his time in the Marine Corps and beyond, he has answered calls for help. Unfortunately for him the "cause" he responded to on January 6th under the guise of "patriotism" was seditious at worst, chaos at best.

The evidence reflects Chris entering the Capitol after waves of other protesters had already made their way in. He walks around for a while and exits through the East Front House door at 2:44 p.m. PSR, pg.8. He then milled around outside some more and later went to the Upper Terrace on the north side of the Capitol where he and other protestors were confronted by

5

law enforcement. Id. Rather than retreat, Mr. Rockey confronted the line of officers, pulled at two riot shields and grabbed a baton when being forcibly removed from the Capitol grounds.

## POST-JANUARY 6TH

In the months following January 6, 2021, a case agent reached out to Mr. Rockey inquiring about the case. In early 2022, Rockey engaged an attorney, other than the undersigned, and expressed a desire to clear his chest and talk with the government about what happened that day. Unfortunately, the government would never give him a proffer letter. Mr. Rockey has always been adamant that he wanted to close this chapter of his life and to answer to what he is responsible for. Following his plea in June of this year, he underwent a full debriefing by the government.

## DEPARTURE AND/OR VARIANCE REQUEST

This Court should depart and/or vary from the Guideline's recommendation of 24-30 months and sentence Mr. Rockey to house arrest followed by probation or, if the Court believes custody in a facility is appropriate, allow Mr. Rockey to complete a period of "weekend time" at a local detention center. As this Court is aware, "while the guidelines remain 'the starting point and initial benchmark' in sentencing, a court may determine that a sentence outside of the guidelines framework is warranted based upon the statutory sentencing factors found at 18 U.S.C. § 3553(a)" and *vary* from the guidelines.

https://www.ussc.gov/sites/default/files/pdf/training/primers/2024_Primer_Departure_Variance.pdf citing, Gall v. United States, 552 U.S. 38, 49 (2007) and Rita v. United States, 551 U.S. 338, 344 (2007). Moreover, the court can *depart* pursuant to a specific provision in the guidelines themselves.

I.        Federal Sentencing Guidelines Manual § 5H Grounds for Departure

Section 5H provides different reasons a court may depart from the Guidelines when imposing a sentence. Several are relevant to this litigation and are outlined below.

### §5H1.3.    Mental and Emotional Conditions

"Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. See also Chapter Five, Part K, Subpart 2 (Other Grounds for Departure).

In certain cases a downward departure may be appropriate to accomplish a specific treatment purpose. See §5C1.1, Application Note 7."

As discussed above and as indicated in the PSR, Mr. Rockey suffers from PTSD which is directly attributable to his service as a Marine in Desert Storm. The current therapy he is undergoing for PTSD and nightmares, upon information and belief, are not offered by U.S. Bureau of Prisons. Allowing him to serve a period of probation, house arrest, or weekend time would allow him to continue on with this current therapy regime.

### §5H1.4.    Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction

"Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

As indicated *supra*, and indicated on page 15 of the PSR, Mr. Rockey has a litany of medical problems, including sleep apnea, high blood pressure, and high cholesterol. The medicine he takes for high cholesterol, Amlodipine Besylate and Alirocumab are injectable as he

7

is allergic to all other types.  PSR at 16.  The undersigned's research of the BOP National Formulary lists the former in pill form but does not list the latter at all, which if true, would complicate his already deleterious health.

https://www.bop.gov/resources/pdfs/2022_winter_formulary_part_1.pdf

Dr. Donna Maddox, a forensic psychiatrist, was retained by the Defense in this case to evaluate Mr. Rockey for purposes of sentencing.  In her report, she states:

**"Conclusions**

1. Mr. Rockey has PTSD and was symptomatic on the day of the rally.

2. Mr. Rockey is undergoing specialized treatment for PTSD which is not offered at BOP. His symptoms are improving.

3. Mr. Rockey is not antisocial and has the capacity to follow any sentences given by the court.

4. If he is confined to BOP, he will require continued, frequent psychiatric care. "

Exhibit #2, Dr. Maddox Report, page 3.

### §5H1.11.  Military, Civic, Charitable, or Public Service; Employment-Related Contributions; Record of Prior Good Works

"Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines."

Mr. Rockey's military service, and resulting service-connected disabilities, militate strongly in favor of his request for a below-guidelines sentence.  As stated throughout this memorandum, Mr. Rockey's military service warrants serious deference and "distinguishes the case from the typical cases covered by the guidelines", as described in Section 5H1.11.

It is the opinion of the undersigned, and the opinion of Dr. Maddox, that but for Rockey's military service, he would never have gone to Washington, D.C. in the first place. Mr. Rockey felt the need to protect his peers and law enforcement from Antifa and other people he believed, perhaps naively, were intent on harming them. Looking at this through the COVID-19-clouded lens, coupled with his service-connected medical conditions, it makes sense. It does not excuse his conduct, but it "distinguishes the case from the typical cases covered by the guidelines" as described in §5H1.11.

Moreover, §5K2.13 allows for a court to depart downward from the guidelines "if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." Mr. Rockey would not have participated in the targeted crimes if he did not suffer from combat trauma and, more likely than not, he would have vacated the portico prior to Capitol Security forcibly removing the protestors.

## **SUMMARY**

Upon consideration of the factors listed in 18 U.S.C. Sec. 3553(a), coupled with the provisions of Section 5 of the Guidelines, this Court should downward depart and vary from the Guidelines and impose a sentence of probation or home confinement. Should the Court believe a custodial sentence is appropriate, allowing Mr. Rockey to complete that sentence at a local facility on the weekends would allow him to maintain his VA monetary and treatment benefits. The fact that Mr. Rockey will be a "Felon", coupled with social ostracism and shame have significantly altered his life and provided punishment which will last longer than any period of custody or probation. Mr. Rockey's misguided patriotism has cost him dearly. I would ask this Court to not tax his freedom as well.

        Respectfully submitted,

        R. BRADY VANNOY
        ATTORNEY FOR DEFENDANT


By:        s/R. Brady Vannoy
        R. Brady Vannoy, Esquire (#SC0010)
        Vannoy Law Firm
        105 Carolina Avenue
        Moncks Corner, SC 29461
        brady@bradyvannoy.com
        Tel: 843.761.0610
        Fax: 843.761.4458


October 31, 2024